# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

Kelly L. Stephens
Clerk

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed: July 02, 2024

Ms. Katherine L. Frazier
Mr. Robert Joseph Leibovich
County Attorney's Office
for the County of Shelby
160 N. Main Street
Suite 950
Memphis, TN 38103

Mr. Jarrett Michael Dean Spence
Mr. Robert L. J. Spence Jr.
Spence Partners
65 Union Avenue
Suite 900
Memphis, TN 38103

Re: Case No. 24-5044, *Judy Martin v. Shelby County, TN*
Originating Case No. : 2:22-cv-02076

Dear Counsel,

The Court issued the enclosed opinion today in this case.

Enclosed are the court's unpublished opinion and judgment, entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

Sincerely yours,

s/Cathryn Lovely
Opinions Deputy

cc: Ms. Wendy R. Oliver

Enclosures

Mandate to issue

NOT RECOMMENDED FO PUBLICATION
File Name: 24a0289n.06

Case No. 24-5044

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| JUDY MARTIN, | ) | **FILED** |
| Plaintiff-Appellant, | ) | Jul 02, 2024 |
| | ) | KELLY L. STEPHENS, Clerk |

JUDY MARTIN,

    Plaintiff-Appellant,

v.

SHELBY COUNTY, TENNESSEE,

    Defendant-Appellee.

)
)
)
)
)
)
)
)
)

**FILED**
Jul 02, 2024
KELLY L. STEPHENS, Clerk

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF
TENNESSEE

OPINION

Before: KETHLEDGE, THAPAR, and DAVIS, Circuit Judges.

THAPAR, Circuit Judge. After Judy Martin misreported Shelby County's COVID vaccine inventory, the County forced her out of her job and publicly critiqued her performance. Martin claims this criticism violated her constitutional rights. We disagree and affirm the district court's grant of summary judgment.

I.

Judy Martin oversaw Shelby County's COVID-19 vaccine roll-out. While inventorying vaccines, Martin discovered expired doses. She reported to the County Health Director that around 1,000 doses had expired.

That report prompted action. Even more doses were about to go bad, so the County raced to use them. Martin administered many of the doses at a vaccination event for teachers. And she planned to administer the rest to prisoners later that day. But a major winter storm blasted the

No. 24-5044, *Martin v. Shelby County*

Memphis area, and Martin arrived at the prison after the inmates had gone to bed. So she put the approximately 700 now-expired doses in her car and told nobody.

Meanwhile, the Health Director reported the around 1,000 expired vaccines to state health officials. Since Martin didn't tell anyone about the 700 expired doses in her car, those weren't included in the report.

Eventually, however, news broke that Shelby County had allowed more vaccine doses to expire than it previously reported. When it became obvious that Martin was to blame, she retired to avoid being fired. Soon after, Mayor Lee Harris tweeted an update:

> I learned that the information regarding the level of vaccine that expired in Shelby County was not accurate. . . . [W]e have terminated the site manager who managed the relationship with the pharmacy and allegedly provided the initial false information.

Martin landed on her feet. After the tweet, she received multiple uplifting phone calls from others. She didn't receive any threats, angry phone calls, or personal attacks after the tweet. And, without applying, Martin was approached and offered a job with a local nonprofit, which she accepted.

But Martin was unsatisfied. Stung by what she perceived as the County's defamatory tweet, Martin requested a name-clearing hearing, which the County denied. So she sued Shelby County. She alleged Mayor Harris's tweet stigmatized her by accusing her of intentionally providing false information. And she claimed that the County's refusal to give her a name-clearing hearing violated her procedural-due-process rights. The district court granted summary judgment to the County.

## II.

The Due Process Clause of the Fourteenth Amendment guarantees procedural protections before a state actor can limit someone's property or liberty interests. *Bd. of Regents of State Colls.*

No. 24-5044, *Martin v. Shelby County*

*v. Roth*, 408 U.S. 564, 569–70 (1972). At first blush, being fired and criticized doesn't implicate either "property" or "liberty." U.S. Const. amend. XIV. After all, in Tennessee, at-will employees typically have no property interest in continued employment. *Gregory v. Hunt*, 24 F.3d 781, 785 (6th Cir. 1994). And reputational injury alone isn't an actionable liberty interest. *Mertik v. Blalock*, 983 F.2d 1353, 1362 (6th Cir. 1993). So it's hard to see how the two of them together could work an injury of constitutional magnitude.

But the Supreme Court has explained that, in some narrow contexts, the Due Process Clause prevents a state from firing an employee and criticizing her in the process. *See Paul v. Davis*, 424 U.S. 693, 710 (1976). This peculiar (and infrequently utilized) "right" has been dubbed a "stigma-plus" claim, and the remedy is a "name clearing hearing." *Doe v. Mich. Dep't of State Police*, 490 F.3d 491, 501 (6th Cir. 2007); *Quinn v. Shirey*, 293 F.3d 315, 320 (6th Cir. 2002). To prevail, the plaintiff must show, among other things, that the government made a stigmatizing statement in conjunction with her termination. *Ludwig v. Bd. of Trs. of Ferris State Univ.*, 123 F.3d 404, 410 (6th Cir. 1997).

Here, Martin has failed to prove the County's statement was stigmatizing. A statement about a fired employee isn't sufficiently stigmatizing unless it is so extreme that it causes "moral stigma." *Id.* at 410. For instance, we have found that wrongly classifying someone as a sex offender rises to the level of moral stigma. *Hart v. Hillsdale Cnty.*, 973 F.3d 627, 644 (6th Cir. 2020). On the other hand, merely rendering an employee less favorable to future employers won't do. Knowledge that a potential employee is incompetent or neglected a duty, for example, doesn't trigger "moral stigma." *Ludwig*, 123 F.3d at 410. Instead, the defamatory statement must either "seriously damage" the plaintiff's standing in the community or "foreclose" her ability to get another job. *Id.*; *see Roth*, 408 U.S. at 573. Neither occurred here.

No. 24-5044, *Martin v. Shelby County*

A.

Martin alleges the mayor's statement maligned her truthfulness and harmed her reputation, damaging her standing in the community. But the undisputed evidence doesn't bear that out.

Start with the declarations from Martin's friends, William Adkins and Yvonne Madlock. Adkins interpreted the tweet as accusing Martin of acting in a "nefarious, dishonest, or improper" way. R. 43-2, Pg. ID 308. But one phone call with Martin was enough to clear any stain from her character. At the end of the call, he was assured Martin hadn't acted dishonestly. *Id.* Similarly, Madlock admitted that even though she interpreted the tweet as accusing Martin of intentionally lying, she never believed it. Like Adkins, Madlock resolved any discrepancies over a conversation with Martin. At most, then, these statements show that community members easily overcame any temporary doubts about Martin's character.

Next, Martin notes that she received phone calls and messages from other members of the public. This can't help her because Martin admits all the calls were supportive. Martin understandably resents that her departure from the health department was broadcast for the world to watch, but a community rallying around her does little to show stigma.

Finally, Martin points to the language of the tweet itself. She says it accuses her of intentional misconduct—not mere oversight. That's so, she says, because the word "false" in the tweet could suggest she intentionally misled the County. But even if that's how people *could* interpret the tweet, Martin hasn't shown that the tweet "seriously damage[d]" her standing in the community. *See Ludwig*, 123 F.3d at 410. She didn't receive any angry emails or voicemails from concerned citizens. Nor were any letters mailed to her house. Or signs posted outside. In fact, she can muster up only two negative reactions: a colleague criticized the "site manager" in a conversation with Martin, and Martin's son-in-law had a barbershop conversation with someone

- 4 -

No. 24-5044, *Martin v. Shelby County*

in the community who angrily blamed officials for allowing vaccines to expire. But these just show anger at the County's mishandling of the vaccines. There's no evidence those people accused the site manager of being a liar. Nor that she was of poor moral character. Or even that they knew Martin was the site manager. Thus, their complaints about wasted vaccines don't amount to moral stigma directed at Martin. *See Chilingirian v. Boris*, 882 F.2d 200, 205 n. 8 (6th Cir. 1989).

In sum, the tweet didn't provoke any community opprobrium of Martin's character. At best, the public was supportive, and, at worst, it merely criticized her poor job performance.

### B.

Martin also can't show that the tweet foreclosed her ability to get a job. *See Roth*, 408 U.S. at 573. She hasn't even attempted to show as much,[1] and for good reason: the undisputed evidence points the opposite way. After her separation, Martin didn't apply to any other job. Instead, an employer approached *her* and offered her a job.

Nor were there other professional consequences. The nursing board took no disciplinary action against her. No potential employer told her they wouldn't hire her because of the incident. And she was able to take a job in the same location while receiving retirement benefits from Shelby County. Martin thus continues to have the same opportunities she had before.

\*       \*       \*

Getting fired is unpleasant. And having that termination broadcast is even more so. But the Constitution of the United States says little about lost jobs, and nothing about this one. Because Martin can't show the mayor's tweet exposed her to moral stigma, we affirm.

---

[1] The most Martin can muster on this point is that the tweet made her subjectively apprehensive about applying for new jobs. But that is quite different from the objective harm of being denied a job opportunity—which Martin concedes didn't occur. *Cf. Crosby v. Univ. of Ky.*, 863 F.3d 545, 556–57 (6th Cir. 2017).

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 24-5044

JUDY MARTIN,

    Plaintiff - Appellant,

    v.

SHELBY COUNTY, TENNESSEE,

    Defendant - Appellee.

```
┌─────────────────────────────┐
│           FILED             │
│        Jul 02, 2024         │
│   KELLY L. STEPHENS, Clerk  │
└─────────────────────────────┘
```

Before: KETHLEDGE, THAPAR, and DAVIS, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Western District of Tennessee at Memphis.

THIS CAUSE was heard on the record from the district court and was submitted on the briefs without oral argument.

IN CONSIDERATION THEREOF, it is ORDERED that the district court's grant of summary judgment to Shelby County is AFFIRMED.

**ENTERED BY ORDER OF THE COURT**

*Kelly L. Stephens*

Kelly L. Stephens, Clerk